# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**EDDIE WILKINSON,**
        **Petitioner,**

      **v.**                            **Case No. 17-C-0845**

**DON STRAHOTA, Warden,**
**New Lisbon Correctional Institution,**
        **Resepondent.**

---

## DECISION AND ORDER

Eddie Wilkinson petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

Wilkinson's criminal case began when the state charged him with one count of burglary. The state alleged that Wilkinson entered a vacant home in the City of Milwaukee and removed stained glass windows and doors. A month before trial, the state filed an amended information charging Wilkinson with two additional counts: burglary of a second property, and receiving stolen property. These additional counts also involved stained glass windows. A jury found Wilkinson guilty of both burglary charges but acquitted him of receiving stolen property. The court sentenced Wilkinson to two consecutive 10-year prison terms, each term comprising 5 years' initial confinement and 5 years' extended supervision.

Wilkinson's appellate counsel filed a no-merit appeal. In her no-merit brief, counsel discussed whether trial counsel rendered ineffective assistance. She identified three potential errors: (1) not objecting to the amended information, (2) not moving to

sever the three counts for trial, and (3) not moving to strike an allegedly biased juror for cause. (Counsel also discussed whether the evidence was sufficient to support the convictions and whether the trial court properly exercised its sentencing discretion.) Wilkinson filed a pro se response to the no-merit brief. In that response, he raised the following issues: (1) appellate counsel was ineffective, (2) the prosecutor tampered with evidence and knowingly used false evidence, (3) trial counsel was ineffective for not calling an expert witness, and (4) the witnesses who testified in support of the receiving-stolen-property charge (of which he was acquitted) were not credible.

The Wisconsin Court of Appeals reviewed the no-merit brief and Wilkinson's pro se response, and also conducted an independent review of the record. *State v. Wilkinson*, No. 2013AP2517-CRMN, slip op. at 4 (Wis. Ct. App. Dec. 30, 2014). It found no arguably meritorious appeal issues, summarily affirmed the judgment of conviction, and discharged appellate counsel. Wilkinson then filed a pro se petition for review with the Wisconsin Supreme Court that raised the following claims: (1) that he was entitled to have an expert witness testify at trial concerning the authenticity of stained glass, (2) that trial counsel rendered ineffective assistance in failing to investigate the case before trial, (3) that one of the jurors was biased, (4) that the trial court erred in admitting "other acts" evidence, and (4) that the jury should have been instructed differently as to his theory of the defense. ECF No. 18-2. Wilkinson also asked to have "effective" appellate counsel appointed to represent him. *Id.* The Wisconsin Supreme Court denied review.

A few months later, Wilkinson returned to the trial court and filed a pro se motion for collateral postconviction relief under Wis. Stat. § 974.06. The motion itself is not in

the record, but the trial court described the motion as raising "ineffective assistance of counsel and other claims," including trial counsel's failure to move to strike the allegedly biased juror for cause. ECF No. 15-3. The trial court denied the postconviction motion. It found that the Wisconsin Court of Appeals already addressed the juror issue in its no-merit opinion and that therefore Wilkinson could not relitigate it. The court also found that all of Wilkinson's other issues were waived when he failed to raise them in his pro se response to counsel's no-merit brief.

Wilkinson tried to obtain appellate review of the trial court's denial of his postconviction motion. However, the court of appeals initially determined that the papers he filed did not qualify as a notice of appeal. *See* ECF Nos. 15-4, 15-5 &15-6. Eventually, Wilkinson filed a notice of appeal, but by that point the time to file a timely appeal had lapsed. The court of appeals dismissed the appeal for lack of jurisdiction on the ground that no timely notice of appeal had been filed. *See State v. Wilkinson*, No. 2016AP449 (Wis. Ct. App. April 5, 2016). Wilkinson sought review in the Wisconsin Supreme Court, but that court denied his petition.

Wilkinson now seeks relief under § 2254. In his petition, he alleges that he was denied his Sixth Amendment right to represent himself at trial, and also that his trial counsel rendered ineffective assistance by committing the following errors: (1) not moving to strike a juror for cause, (2) failing to cross-examine a fingerprint expert, (3) failing to ask certain specific questions during his cross-examination of the state's two DNA experts, and (4) failing to argue that Wilkinson had been framed by the police. The respondent argues that Wilkinson procedurally defaulted all of his claims other than his ineffective-assistance claim based on counsel's not moving to strike the juror for

3

cause.  As to that claim, the respondent argues that Wilkinson has not shown that he is entitled to relief.

## II. DISCUSSION

I will first address whether Wilkinson is entitled to habeas relief on his claim involving the allegedly biased juror, which the respondent concedes has been properly exhausted.  I then address whether Wilkinson has procedurally defaulted his remaining claims and conclude that he has.  However, I also discuss the merits of the defaulted claims.

### A.    Motion to Strike Juror

As part of Wilkinson's no-merit appeal, appellate counsel discussed the possibility that trial counsel rendered ineffective assistance by not moving to strike Juror #6.  During voir dire, this juror indicated that he worked for the City of Milwaukee as a housing rehab specialist.  He testified that, during the course of his job, he learned that thieves would sometimes burglarize vacant city properties and remove stained glass windows.  This juror also testified that he knew two of the state's witnesses.  The first was Karen Taylor, who also worked for the city.  The state offered Taylor's testimony with respect to one of the burglaries, which involved a city property, to establish that the city had not granted Wilkinson permission to enter the property.  The other witness known by Juror #6 was Dustin Lunde.  Lunde owned an antique shop where the stained glass windows relevant to the receiving-stolen-property charge were found.  Juror #6 stated that he met Lunde through his work during college for another antiques dealer.

Wilkinson's appellate counsel determined that an ineffective-assistance claim based on trial counsel's failure to move to strike Juror #6 for cause would not have arguable merit. The Wisconsin Court of Appeals agreed with appellate counsel's assessment. It wrote:

> The transcript reveals no evidence of subjective bias. Juror #6 stated in response to questioning that he could be fair and unbiased. As for objective bias, "'a prospective juror's knowledge of or acquaintance with a participant in the trial, without more, is insufficient grounds for disqualification.'" *State v. Smith*, 2006 WI 74, ¶ 34, 291 Wis. 2d 569, 716 N.W.2d 482 (citation omitted brackets in *Smith*). There would be no arguable merit to a claim that trial counsel performed deficiently by not moving to strike this juror for cause.

Op. of Wis. Ct. of App. in 2013AP2517-CRMN, at 4.

The Wisconsin Court of Appeals adjudicated this claim on the merits, and therefore the standard of review in 28 U.S.C. § 2254(d) applies. Under that standard, I may grant relief only if the court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.

In his brief in support of his federal petition, Wilkinson does not show that the Wisconsin Court of Appeals rendered a decision that was contrary to, or involved an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984), or any other Supreme Court case. *See* Br. in Supp. at 10–13, ECF No. 16. Nor does he show that the court of appeals based its decision on an unreasonable determination of the

facts. Nor can I detect any deficiency in the court of appeals's handling of this claim. Therefore, Wilkinson is not entitled to relief on this claim.

**B.     Procedural Default**

The respondent contends that because Wilkinson did not properly present his remaining claims to the state courts through one complete round of review, and because it is now too late for him to do so, he has procedurally defaulted those claims. *See Johnson v. Foster*, 7786 F.3d 501, 504–05 (7th Cir. 2015).

As noted above, during the no-merit appeal, neither Wilkinson, his appellate counsel, nor the court of appeals discussed any issue that Wilkinson now pursues in his federal petition, other than the issue involving the allegedly biased juror. Moreover, Wilkinson did not include any of those issues, other than the juror issue, in his petition for review with the Wisconsin Supreme Court on direct appeal. But Wilkinson did raise those issues in the motion for collateral postconviction relief he filed in the trial court under Wis. Stat. § 974.06. However, after the trial court denied his motion, Wilkinson failed to properly appeal to the Wisconsin Court of Appeals and the Wisconsin Supreme Court. Rather, Wilkinson did not file a timely notice of appeal, and therefore the court of appeals dismissed his appeal for lack of jurisdiction.

The respondent argues that Wilkinson committed two procedural defaults: (1) he failed to raise his federal claims in his pro se response to the no-merit brief, and (2) he failed to file a timely appeal of the trial court's denial of his postconviction motion. As to the first alleged default, the Seventh Circuit has been reluctant to find that a Wisconsin habeas petitioner procedurally defaults a claim by failing to raise it in his pro se

6

response to a no-merit report, especially when the allegedly defaulted claim involves ineffective assistance of trial counsel. *See Johnson v. Thurmer*, 624 F.3d 786, 789–91 (7th Cir. 2010); *Morales v. Boatwright*, 580 F.3d 653, 660–62 (7th Cir. 2009); *Page v. Frank*, 343 F.3d 901, 907–09 (7th Cir. 2003). This is for two reasons. First, habeas review is not barred when a state applies a procedural rule in "an unprincipled, inconsistent, or freakish manner," and the Seventh Circuit has found Wisconsin's appellate procedure inconsistent to the extent that it deems ineffective-assistance claims waived if not raised in a pro se response to a no-merit brief. *Johnson*, 624 F.3d at 789. The court noted that, usually, the Wisconsin courts will not allow an ineffective-assistance claim to be raised on direct appeal unless the criminal defendant first raised the claim in a postconviction motion filed in the trial court. *Id.* at 790. But in a no-merit appeal, appellate counsel likely will not have filed a postconviction motion in the trial court, and therefore the defendant will be prohibited from raising an ineffective-assistance claim in his pro se response to the no-merit brief. *Id.* Thus, reasons the Seventh Circuit, it would be unfair to deem an ineffective-assistance claim waived based on the defendant's failure to raise it in his pro se response to the no-merit brief. *Id.*

The second reason the Seventh Circuit has declined to find a claim procedurally defaulted based on the failure to raise it in response to a no-merit report is that doing so would be inconsistent with the defendant's Sixth Amendment right to counsel during his first appeal as of right. *See Page*, 343 F.3d at 909. The court stated:

> It would be incongruous to maintain that [a defendant] has a Sixth Amendment right to counsel on direct appeal, but then to accept the

> proposition that he can waive such right by simply failing to assert it in his pro se response challenging his counsel's *Anders* motion.

*Id.*

Since 2010, the Seventh Circuit has not revisited the question of whether a Wisconsin petitioner may procedurally default a claim by failing to raise it in his pro se response to a no-merit report. Moreover, since the Seventh Circuit last addressed this issue, the Wisconsin Supreme Court has suggested that a defendant *may* raise an ineffective-assistance claim in his pro se response to a no-merit report, even if appellate counsel did not preserve that claim by raising it in a postconviction motion in the trial court. *See State v. Allen*, 328 Wis. 2d 1, 32–33 (2010). It may be that *Allen* cures the problems that the Seventh Circuit identified in its previous opinions. And because Wilkinson's no-merit appeal occurred in 2014—after *Allen* was decided—it may be that Wilkinson procedurally defaulted his federal claims, including his ineffective-assistance claims (other than the one involving the jury issue), by not raising them in his pro se response to the no-merit brief.

However, I need not decide whether Wilkinson committed a procedural default during his no-merit appeal. This is because, even if Wilkinson did not default his claims at that time, he was still required to do something to properly exhaust those claims in state court before seeking relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). And the only way to exhaust those claims would be to file a state postconviction motion under Wis. Stat. § 974.06. *See, e.g., Page*, 343 F.3d at 906. Here, Wilkinson did file such a motion, which the trial court denied based, in part, on Wilkinson's failure to raise his claims in response to the no-merit brief. If at this point

8

Wilkinson filed a proper appeal and the Wisconsin Court of Appeals affirmed on the ground that Wilkinson had waived his federal claims by not raising them in his response to the no-merit brief, then the same problem at issue in the Seventh Circuit cases discussed above would be presented here. *See, e.g., Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (court looks to "last state court that rendered judgment" to determine whether claim is procedurally defaulted). But the Wisconsin Court of Appeals did not deem Wilkinson's federal claims waived because he did not raise them in his response to the no-merit brief. Instead, the court of appeals dismissed his appeal because he did not file a timely notice of appeal from the trial court's disposition of his postconviction motion. This dismissal rested on a state procedural ground that had nothing to do with Wilkinson's no-merit appeal, namely, the Wisconsin rule providing that a notice of appeal must be filed within 90 days of the judgment or order being appealed. *See* Wis. Stat. §§ 808.04(1) & 809.30(2)(L). And there is no suggestion that this rule is not well-established or that the court of appeals applied it to Wilkinson in an unusual or unfair manner. Therefore, I conclude that Wilkinson procedurally defaulted his federal claims (other than the jury issue) when he failed to file a timely notice of appeal from the trial court's denial of his postconviction motion. *See Coleman v. Thompson*, 501 U.S. 722, 727, 740 (1991) (finding that state court's dismissal of appeal as untimely resulted in procedural default).

A petitioner may attempt to have his procedural default set aside by showing both cause and prejudice to excuse the default or by showing that a fundamental miscarriage of justice would occur if his default were not excused. *See, e.g., Thomas v. Williams*, 8222 F.3d 378, 386 (7th Cir. 2016). Cause is defined as an objective factor,

external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015). Prejudice means an error which so infected the entire trial that the resulting conviction violates due process. *Id.* A fundamental miscarriage of justice occurs only when the claimed constitutional violation probably caused an innocent person to be convicted. *Id.*

Wilkinson claims that he received ineffective assistance from his appellate counsel during the no-merit appeal, and that this constitutes cause for his procedural default. However, as discussed above, I do not find that Wilkinson defaulted his claims during the no-merit appeal. Rather, the default occurred when Wilkinson failed to file a timely notice of appeal from the trial court's denial of his postconviction motion. Wilkinson has not attempted to establish cause for *that* failure. Nor can I see any grounds that might constitute cause for that failure. Wilkinson did not have a right to counsel during the proceedings on his postconviction motion, *see Graham v. Borgen*, 483 F.3d 475, 481 (7th Cir. 2007), so he cannot assert an ineffective-assistance claim as cause. And although Wilkinson's failure to file a timely notice of appeal might have been due to his pro se status and limited knowledge of the law, these grounds, by themselves, do not constitute cause to excuse a procedural default. *See Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010). In any event, even if Wilkinson could show cause, he would be unable to also show prejudice because, as discussed below, his defaulted claims do not have merit.

Wilkinson also claims that he is actually innocent of the crimes for which he was convicted. To establish actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must also persuade the district court that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Here, Wilkinson does not support his claim of actual innocence with any evidence at all. Although Wilkinson asserts that the police framed him for the burglaries by planting his DNA at the crime scenes, he submits no evidence to support this assertion.

Wilkinson does claim that a recording of his interrogation by a police detective would show that the police threatened to plant his DNA at the crime scenes. However, Wilkinson has not filed this recording, or a transcription of it, with this court, and so I cannot find that no reasonable juror would have convicted him after hearing it.[1] Moreover, according to counsel's no-merit report, a portion of this recording was played for the jury at trial. *See* No-Merit Br. at 9, ECF No. 18-1. Thus, the recording would not qualify as new evidence that was not presented at trial, as required by *Schlup*. Finally, Wilkinson has submitted a letter from his appellate counsel in which she informs Wilkinson that she listened to the entire recording and found that it does not support his claim that the police threatened him or threatened to plant DNA evidence. *See* ECF No.

---

[1] Wilkinson has filed several motions to supplement the record. *See* ECF Nos. 21–23. In these motions, he mentions the recording. However, he does not attach the recording or a transcription of it to his motion. Perhaps he intended to submit the recording after I granted the motions. For the reasons I am about to explain in the text, I have no reason to think that the recording would support Wilkinson's claim of actual innocence. Therefore, I will not schedule additional proceedings to obtain and review the recording.

19-1 at p. 5 of 15.  Thus, I have no reason to think Wilkinson would probably have been acquitted had the jury heard the remainder of the recording.

Accordingly, I will enforce Wilkinson's procedural default of all claims other than the jury issue discussed above.

**C.      Merits of Defaulted Claims**

Although I have found that Wilkinson procedurally defaulted his remaining claims, I will also briefly address those claims on the merits, as the merits relate to Wilkinson's claims of prejudice and actual innocence, which he asserted as grounds for setting aside his procedural default.

**1.      Denial of Right to Self-Representation**

Wilkinson contends that he was denied his Sixth Amendment right to self-representation at trial.  *See Faretta v. California*, 422 U.S. 806 (1975).  However, Wilkinson does not contend that he unequivocally invoked his right to self-representation.  Rather, he contends that the trial judge did not conduct an adequate inquiry once Wilkinson's attorney informed the court that Wilkinson had told him that he wanted to represent himself.

This issue arose on the first day of trial, prior to voir dire, when Wilkinson's trial counsel informed the court that Wilkinson had expressed a desire to represent himself. *See* Br. in Supp. at 7.[2]    After some further discussion, the following exchange transpired:

_____

[2] I quote from the petitioner's brief rather than the trial transcript because no party has filed transcripts with this court.  The petitioner in his brief purports to reproduce excerpts

> The Court: Well, Mr. [Wilkinson], what—Mr. Pierce is ready to try this and represent you. Are you objecting to that?
>
> Defendant: Well, I know he can handle the case better than me, Your Honor. But it's just a certain way that I would like for him to represent me. So, you know, if he willing to, you know what I'm saying, just handle the case the way I want him to, I really would prefer him do it like that.
>
> The Court: Yeah. But he has to—As an attorney, he's obligated to follow the rules of evidence. You know, for example, he may say don't testify and you wanna testify. You may say, ask this question and he may say, I think it's a bad question. But if you want it asked, fine.
>
> Defendant: Right. That's all I'm saying.
>
> The Court: Counsel, I guess he's just gonna suggest some questions he wants you to ask. You can ask it. If there's an objection so be it. It may not be in his best interest and you may not want to ask it, but if he wants it asked, is that okay with you?
>
> Mr. Pierce: Yes, that's fine with me. Thank you.
>
> The Court: Okay, is that fine with you, Mr. Wilkinson?
>
> Defendant: Yes, sir.
>
> The Court: Okay, write out the questions or talk to your attorney. And I have no problem with you being involved . . . . So I think the Court will find the defendant is not requesting counsel to be withdrawn at this point. That the decision is freely, voluntarily and intelligently made. As he said, his attorney can handle this better than he and he's not requesting to represent himself pro se at this point. So we'll proceed . . . .

*Id.* at 8–9.

---

from the transcript, and the respondent has not argued that the petitioner's reproduction is inaccurate.

Wilkinson contends that once the trial court learned that he potentially wanted to waive counsel and proceed pro se, it should have stopped all other business and asked Wilkinson directly whether he was exercising his Sixth Amendment right to self-representation. *Id.* at 9. But of course, as the excerpt above shows, the trial court did exactly that. Once counsel informed the court of Wilkinson's request to proceed pro se, the trial court asked Wilkinson whether he objected to counsel's continuing to represent him. Wilkinson said that he preferred to have counsel try the case, but that he wanted counsel to ask certain questions. After counsel agreed to consider asking those questions, Wilkinson told the court that he was "fine" with counsel continuing to represent him. Thus, the trial court did not fail to explore whether Wilkinson wanted to represent himself.

Wilkinson contends that the trial court was required to engage in a more formal colloquy with him and advise him of certain matters before concluding that he was not exercising his right to self-representation. Wilkinson cites a four-part colloquy that Wisconsin courts must engage in before finding that a defendant has waived his right to counsel. *See State v. Klessig*, 211 Wis. 2d 194, 205–06 (1997). However, this colloquy is not designed to ensure that the defendant truly wants to proceed with counsel rather than represent himself. The matters addressed in the colloquy warn the defendant of the dangers of self-representation, not the dangers of proceeding *with* counsel. *See id.* at 206 (stating that colloquy is designed to "ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could

14

have been imposed on him").   Indeed, it would make little sense to warn a defendant of the dangers of proceeding *with* counsel, as that is generally regarded as the better option.   *See Faretta*, 422 U.S. at 834 ("It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts.").

Here, the trial court asked Wilkinson if he wanted to represent himself, and Wilkinson said that he wanted to continue with counsel, so long as he could suggest questions to counsel.   Therefore, under Wisconsin law, the court was not required to engage in the four-part colloquy that must precede any waiver of the right to counsel. Moreover, Wilkinson does not cite, and I am unaware of, any federal cases holding that a trial court must engage in any specific colloquy with the defendant before finding that he has elected to proceed *with* counsel.   Accordingly, Wilkinson has not shown that the state courts deprived him of his Sixth Amendment right to self-representation.

### 2. Ineffective-Assistance Claim Based on Failure to Confront Fingerprint Expert

Wilkinson next contends that his counsel was ineffective in failing to "confront and effectively cross-examine" the state's fingerprint expert.   Br. in Supp. at 13–15. Wilkinson's brief includes an excerpt from the trial transcript that begins with the prosecutor's expressing his willingness to stipulate to "fingerprint results for a witness who is not here."   *Id.* at 13.[3]   The prosecutor stated that it was "the defense" who wanted to put in the fingerprint results.   *Id.*   The prosecutor then stated that the state

---

[3] As I noted earlier, the trial transcripts are not in the record and the respondent has not argued that the petitioner's excerpts from the transcripts are inaccurate.  Thus, I rely on the excerpts that appear in Wilkinson's brief.

would stipulate that, had its fingerprint expert been called as a witness, he or she would have testified that three fingerprints were lifted from a mirror and examined, that one of the three "was no good for identification purposes," and that the other two prints matched a man named Michael Morgan. *Id.* at 14.

Based on this excerpt, it appears that it was Wilkinson's counsel who wanted to introduce the fingerprint results because they showed that Wilkinson's prints were not on the mirror. Thus, I can discern no reason why Wilkinson would have wanted his attorney to confront or cross-examine the witness. The witness's testimony would have been *favorable* to the defense, and thus Wilkinson would not have wanted to impeach or otherwise undercut the testimony. Moreover, the state stipulated to the important fact, which was that none of the three fingerprints lifted from the mirror matched Wilkinson's fingerprints. In short, I can detect no way in which trial counsel could be deemed to have performed deficiently with respect to the fingerprint evidence.

### 3.    Remaining Ineffective-Assistance Claims

I consider Wilkinson's remaining claims that his counsel performed deficiently together, as they are somewhat related. These claims relate to Wilkinson's belief that his counsel did not properly present his defense theory, which was that the police detectives who investigated the case framed him for the burglaries.

The state presented two DNA experts at trial to establish that Wilkinson's DNA was found at the scene of each burglary. One witness testified that Wilkinson's DNA was found on a cigarette butt recovered from the scene of the first burglary. The other witness testified that Wilkinson's DNA was found on a flashlight recovered from the scene of the second burglary.

16

Wilkinson, who testified in his own defense, claimed that, during an interrogation, Detective Sliwinski threatened him repeatedly and then made statements suggesting that he was going to plant Wilkinson's DNA at the burglary scenes. *See* No-Merit Br. at 9, ECF No. 18-1. The interrogation in which Sliwinski supposedly made these statements was recorded, and Wilkinson asked to play the recording at trial. Defense counsel played a portion of this recording for the jury. *Id.*

Wilkinson argues that his trial counsel performed deficiently by not effectively cross-examining the state's DNA experts. However, Wilkinson admits that counsel cross-examined these witnesses, and he does not reproduce the parts of the trial transcript that comprise the cross-examination. Because I do not know what questions counsel asked on cross-examination, I cannot find that his cross-examination was deficient. Wilkinson seems to be arguing that counsel necessarily performed deficiently because he did not ask a handful of questions that Wilkinson wanted him to ask. *See* Br. in Supp. at 16–17. These questions seem to have been designed to support Wilkinson's claim that the police framed him, in that they ask whether the evidence bags containing the cigarette and flashlight had been tampered with and whether the detectives could have planted Wilkinson's DNA on these items. However, the failure to ask these questions was not necessarily deficient performance. As far as the record reveals, the witnesses could have testified that the evidence bags were not tampered with and that it would not have been possible for the detectives to plant his DNA on those items. Perhaps if trial counsel had failed to investigate whether there were grounds for questioning the integrity of the DNA evidence, or counsel failed to undercut the DNA evidence on cross-examination with favorable information he learned during

17

the investigation, Wilkinson could claim that his counsel was ineffective. But as it stands, the record does not show that the questions Wilkinson wanted asked would have helped his defense. Therefore, I cannot find that counsel's failure to ask those questions was deficient performance.

Wilkinson also argues that counsel performed deficiently by not playing the recording of his interrogation by Detective Sliwinski. However, as discussed in the context of actual innocence, above, appellate counsel's no-merit report states that defense counsel actually played a portion of this recording for the jury. No-Merit Br. at 9, ECF No. 18-1. Moreover, Wilkinson has filed a letter from his appellate counsel in which counsel states that she listened to the entire recording and found that there was nothing coercive, threatening, or ominous about it, and that it did not support his claim that the police framed him. ECF No. 19-1 at p. 5 of 15. Thus, nothing in the record supports Wilkinson's claim that trial counsel performed deficiently by not playing the recording of the interrogation for the jury.

Finally, Wilkinson contends that his trial counsel performed deficiently because, during opening statements, he told the jury that he was not arguing that Wilkinson did not do anything wrong. *See* Br. in Supp. at 18. Wilkinson contends that this statement amounted to an admission that Wilkinson was guilty of the charges. Again, however, Wilkinson has not submitted a transcript of the opening statement or reproduced enough of it to provide the context in which this statement was made. And depending on the context, this statement could have been perfectly appropriate. For example, it was undisputed at trial that the police found Wilkinson hiding in a laundry chute at the scene of the second burglary, which was of a vacant city-owned property. Wilkinson

testified that he had been sleeping at the property because he had nowhere else to go, and that he panicked when he saw the police and went to hide in the laundry chute. *See* No-Merit Report at 9. Obviously, then, Wilkinson was guilty of trespassing, and this may have been what counsel was referring to when he said that he was not arguing that Wilkinson did not do anything wrong.

In short, Wilkinson has not shown that his trial counsel performed deficiently in any respect. Therefore, he has not shown that his conviction was obtained in violation of the Sixth Amendment.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Wilkinson's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

**IT IS FURTHER ORDERED** that Wilkinson's motion to appoint counsel (ECF No. 12) is **DENIED** on the ground that he has not shown that he made a reasonable attempt to secure counsel on his own, and also because I find that Wilkinson appeared to be capable of litigating this case on his own.

**IT IS FURTHER ORDERED** that Wilkinson's "motion requesting good cause being shown" (ECF No. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that Wilkinson's motions to supplement the record (ECF Nos. 21–23) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 9th day of March, 2018.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge